**Veenus Rivera LNU, Petitioner**

v.

**ATTORNEY GENERAL OF the UNITED STATES, Respondent.**

No. 07–4655.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) Jan. 21, 2009.

Opinion filed: Jan. 30, 2009.

Frank B. Lindner, Esq., Lindner & Lindner, Yardley, PA, for Petitioner.

Edward J. Duffy, Esq., United States Department of Justice, Office of Immigration Litigation, Washington, DC, for Respondent.

Before: FUENTES, WEIS and GARTH, Circuit Judges.

## OPINION

PER CURIAM.

Veenus Rivera Lnu petitions for review of a Board of Immigration Appeals ("BIA") decision dismissing her appeal of the Immigration Judge's ("IJ") decision denying her applications for relief from removal. We will deny the petition for review.

Lnu is a native and citizen of India.[1] Lnu came to the United States in 2000 as a visitor. In 2004, the Immigration and Naturalization Service issued a notice to appear charging that Lnu was subject to removal for remaining here longer than permitted. Through counsel, Lnu conceded that she was removable as charged. She applied for withholding of removal, relief under the Convention Against Torture, and voluntary departure. Lnu withdrew her asylum application because it was time-barred.

Lnu testified that she was married in 1982, and that she had a daughter in 1984 and a son in 1992. She stated that she fears her husband, who began abusing her in 1987 because he blamed her for the fact that their daughter is deaf. Lnu's husband had also started meeting other women. Lnu stated that her husband beat her twice a week until 1992, and that he broke furniture and other property at their home.

Lnu further testified that in 1992, when she was pregnant, she went to live with her cousin's sister in the town of Kodumpakam, which was about 20 miles from Viardarpakam, where her husband lived. She stated that she could no longer live with her husband because he wanted her to have an abortion and because he was abusing her. Lnu testified that her husband would go to her cousin's house, shout at her, and tell her to live in the town of Kochi, where she was born. After two months, in May 1992, Lnu went to live with her aunt in Kochi, which was about 500 to 600 miles away. In January 1993, she returned to her cousin's sister's house in Kodumpakam and lived there until 2000. She stated that she did not stay with her aunt in Kochi because she was afraid her husband would come and abuse her. Lnu testified that her husband continued to harass her at her cousin's sister's house between 1993 and 2000 by shouting at her and by sending boys to shout at her. Lnu stated that the harassment stopped in 2000 after her husband married another woman. Lnu also stated that she remains married to her husband, and that she fears that he will kill her if she returns to India.

Lnu further testified that she had left Kochi and had returned to Kodumpakam to find a job. She explained that she might have gotten a job in Kochi but the salaries there were poor. Lnu also stated that her husband wants to kill her now because he believes that she should live with her aunt and uncle in Kochi. On cross-examination, Lnu testified that she could live in Kochi if she wanted to and that her husband would not go there, but she then stated that her husband would not leave her alone. After counsel for the Government commented that he found it hard to believe that her husband would travel five to six hundred miles to bother her in Kochi, Lnu stated, contrary to her earlier testimony and her written application for relief from removal, that her husband now lives in Kochi with a new woman, and that he moved there four years

---

1. Lnu stated in an affidavit that her name is Veenus Bivera. Lnu explained that she was identified as Veenus Bivera Lnu in the immigration proceedings because her visa stated that her surname is LNU, apparently for Last Name Unknown, due to the fact that her passport did not correctly provide her surname. Because Petitioner has been referred to as Veenus Bivera Lnu throughout the immigration proceedings, and her attorney identifies her as Veenus Rivera Lnu in the petition for review, we will refer to her as Lnu.

ago. Lnu also stated that her husband had not remarried, but that he was keeping a second woman as his wife.

The IJ found Lnu not credible. The IJ explained that Lnu never detailed any abuse from her husband that rose to the level of persecution, and she testified that she never sought medical treatment for abuse. The IJ further noted inconsistencies in Lnu's testimony that went to the heart of her claim regarding where her husband lived, whether her husband had remarried, and whether he would bother her in Kochi.[2]

In addition to finding Lnu not credible, the IJ stated that the events to which she testified had no nexus to any protected ground under the immigration statute. The IJ noted that Lnu's husband abused her on account of her daughter's disability and because he engaged in extramarital affairs and abused alcohol. The IJ also faulted Lnu for failing to submit reliable evidence of her marriage, birth certificates, and other corroborating evidence. In addition, the IJ noted that the background evidence established that the government in India had taken steps to assist victims of crime against women, which contradicted Lnu's position that she was unable to seek protection from authorities. The IJ concluded that Lnu had failed to satisfy her burden of proof to show a clear probability that she would be harmed if she returned to India based on a protected ground or otherwise. The IJ denied withholding of removal and granted voluntary departure.[3]

The BIA dismissed Lnu's appeal. The BIA concluded that Lnu had failed to meet her burden of proof. The BIA explained that, based on the totality of the circumstances, it found no clear error in the IJ's adverse credibility determination. The BIA stated that the IJ identified substantial inconsistencies within Lnu's testimony and between her testimony and her supporting affidavits, which were present in the record and which Lnu failed to adequately explain. The BIA noted Lnu's inconsistent testimony regarding whether her husband would follow her to Kochi, where her husband was currently living, and whether her husband had remarried. The BIA noted that Lnu only testified that her husband now lived in Kochi after the Government commented that she had admitted she could escape her husband by living there.

The BIA further stated that, even if Lnu's testimony was credible, Lnu had not satisfied her burden of proof for obtaining withholding of removal. The BIA agreed with the IJ that Lnu failed to describe mistreatment that rose to the level of past persecution, or that she had otherwise shown that she would more likely than not suffer persecution on account of a protected ground. The BIA recognized evidence establishing that domestic violence is a problem in India, but noted that there was also evidence that the government had taken steps to help victims of such violence. The BIA granted Lnu's request for voluntary departure. This petition for review followed.

█ We review factual findings, including adverse credibility findings, for substantial evidence. *Chen v. Ashcroft,* 376 F.3d 215, 223 (3d Cir.2004). Under the substantial evidence standard of review, a credibility determination will be upheld un-

---

**2.** The IJ also found affidavits from Lnu's relatives unreliable because they were not originals and because her testimony did not lay any foundation for them. The IJ further noted that Lnu and her husband had been separated since 1992, and that there was no foun-

dation establishing that she was currently married.

**3.** The IJ also denied Lnu's application for relief under the Convention Against Torture. Lnu did not appeal this ruling to the BIA.

less a reasonable factfinder would be compelled to conclude to the contrary. *Id.* Under the Real ID Act, an adverse credibility determination can be based on inconsistencies and other factors without regard to whether they go to the heart of an applicant's claim. 8 U.S.C. § 1158(b)(1)(B)(iii). This provision applies here because Lnu's asylum application was filed after May 11, 2005, the effective date of the Real ID Act.

Lnu argues in her brief that she has a seventh grade education, and that she was confused by the IJ's questioning as to where her husband was living. She points to the following testimony:

IJ: Does he [Petitioner's husband] still live in the home where you used to live with him when you were his wife?

LNU: No, it is my cousin [sic] sister's house.

IJ: He lives in your cousin sister's house now?

LNU: No.

IJ: Where does your husband live?

LNU: My husband lives in Viardanpakam.

A.R. at 78. Although Lnu argues that the IJ failed to clarify her testimony, the record reflects that the IJ continued to ask Lnu questions to determine where her husband was living. The record reflects that, before the above exchange, Lnu had testified that the last time she saw her husband was at her cousin's sister's house, which may explain why she responded as she did to the IJ's first question. The record also reflects that Lnu stated in her written application that her husband lived in Viardanpakam, and that she did not state that he had lived in Kochi for the last four years until the Government questioned whether he would travel five or six hundred miles to bother her there. Lnu testified that her daughter only recently told her that her husband moved to Kochi, but the IJ did not believe her. The BIA did not err in relying on these inconsistencies to support an adverse credibility finding.

Lnu also takes issue with the BIA's reliance on her inconsistent testimony regarding whether her husband had remarried. Lnu initially testified that her husband "married another woman in 2000," and that she remained married to him. A.R. at 75. On cross-examination, the Government asked, "your husband remarried in 2000? When did your husband get a new wife?" A.R. at 83–84. Lnu responded that "[h]e is not married to her but he's keeping a second wife—woman as his wife." A.R. at 84. Lnu argues that she adequately explained the inconsistency.[4]

■ Even if the inconsistencies in Liu's testimony regarding her husband's marital status are insufficient to support an adverse credibility finding, Lnu has not shown—nor does the record reflect—that a reasonable adjudicator would be compelled to conclude that Lnu was credible. *Chen,* 376 F.3d at 223. In addition to the contradiction regarding where her husband lives, which the IJ noted was significant because it relates to Lnu's ability to relocate, the BIA also relied on Lnu's inconsistent testimony regarding whether her husband would try to harm her in Kochi. Lnu initially stated that her husband would not be angry if she moved to Kochi, but she later stated that he would not leave her alone there. Substantial evidence supports the BIA's adverse credibility finding.[5]

---

4. Lnu also appears to have explained what she meant by "married," but the hearing transcript notes that her testimony was indiscernible. A.R. at 84.

5. Substantial evidence also supports the BIA's alternative decision that, even if credible, Lnu did not satisfy her burden of proof on her application for withholding of removal. As noted by the BIA, there is evidence that the

Accordingly, we will deny the petition for review.

government of India has taken steps to assist victims of crimes against women. *See Wong v. Attorney General,* 539 F.3d 225, 233 (3d Cir.2008) (noting that for any claim of persecution, violence perpetrated by civilians does not constitute persecution unless such acts are committed by the government or forces the government is either unable or unwilling to control). The record also reflects that Lnu did not describe mistreatment rising to the level of past persecution, nor did she show that she would more likely than not be persecuted if removed to India. *See* 8 C.F.R. § 1208.16(b) (setting forth withholding of removal applicant's burden of proof); *Fatin v. INS,* 12 F.3d 1233, 1240 (3d Cir.1993) (recognizing BIA's interpretation of persecution as including threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom).